## HOUSTON BELT & TERMINAL RY. CO. v. SCHEPPELMAN. (No. 209–3302.) *

(Commission of Appeals of Texas, Section A. Nov. 30, 1921.)

**1. Municipal corporations ⬅⟹809(1)—Person doing work on street under duty not to impair use for travel.**

It is the duty of persons permitted to do work on a street to so observe the rights of the public as to prevent the same from becoming impaired for the purpose of travel.

**2. Municipal corporations ⬅⟹768(3)—Ordinary care required in constructing sidewalk with even surface.**

A municipality is not an insurer of the safety of pedestrians using the sidewalks, and is not required to construct an even surface, but is only required to exercise ordinary care in constructing reasonably safe sidewalks and in maintaining them so.

**3. Municipal corporations ·⬅⟹821(6)—Negligent construction of sidewalk question for jury.**

In constructing sidewalks where elevation must be dealt with, the duty to the public is discharged if ordinary care is exercised to make them reasonably safe for travel; the required standard being generally for the jury.

**4. Municipal corporations ⬅⟹819(1)—Causing projection in sidewalk to be considered in determining negligence for jury.**

Where defendant railway company in refilling an excavation for a sewer built with the city's permission caused a change in a properly constructed sidewalk, and plaintiff caught her foot on a projecting cement block, the change from the original condition was a circumstance indicating negligence, and one that the jury was warranted in considering, · in determining whether defendant was negligent under the circumstances.

**5. Municipal corporations ⬅⟹821(18)—Negligence of person causing defect in sidewalk jury question.**

Whether one causing a slight inequality in a sidewalk is chargeable with negligence in failing to repair the defect in anticipation of injury to a pedestrian is a question for the jury.

**6. Municipal corporations ⬅⟹819(1)—Facts held to show negligence causing sidewalk defect.**

In an action by a pedestrian, injured when her foot caught on a cement block of a side-walk changed by defendant's sewer construction work, done with the city's permission, evidence *held* sufficient to warrant a finding of negligence. .

**7. Master and servant ⬅⟹318(2)—Negligence of independent contractor held imputable to employer supervising work.**

In an action for injury to a pedestrian by a sidewalk made defective by defendant's construction of a sewer, that the work was done by an independent contractor was no defense, where defendant participated in the construction and exercised immediate control and supervision of it, and defendant was liable whether the supervision was in pursuance of the contract or in violation of it.

**8. Master and servant ⬅⟹320—Independent contractor's faulty construction of sewer, making sidewalk unsafe, held to make owner liable.**

Where a sidewalk ,was made unsafe by defective sewer construction work done under a contract with a property owner, the fact that the work was done by an independent contractor did not preclude recovery against the· owner for a pedestrian's injuries, where the contract provided that if necessary to "water-tamp" the refilling of the excavation it was to be done at the expense of the owner, who failed to require the contractor to water-tamp the earth; the effect of such failure being to· agree by contract to faulty construction making the owner liable.

**9. Municipal corporations ⬅⟹809(1)—No person can render sidewalks unsafe for travel without being directly liable for injury to travelers.**

No person, with or without consent of the municipality, can render a sidewalk unsafe for public use without being liable to a traveler who suffers injury and the neglect of the municipality to restore the sidewalk to a reasonably safe condition is no defense in an action for damages against the party whose negligence caused the defect.

Error to Court of Civil Appeals of Ninth Supreme Judicial District.

Action by F. Scheppelman against the Houston Belt & Terminal Railway Company. A judgment for plaintiff, and a denial of a new trial was affirmed by the Court of Appeals (203 S. W. 167), and defendant brings error. Affirmed.

Andrews, Streetman, Burns & Logue, of ˙ Houston, for plaintiff in error.

Geo. L. Charlton and Carothers & Brown, all of Houston, for defendant in error.

SPENCER, J. This suit was instituted by defendant in error, F. Scheppelman, to recover of plaintiff in error, Houston Belt & Terminal Railway Company, for damages sustained on account of the alleged negligent injuring of his wife.

The railway company, desiring storm sewer connections to drain its property, situated

in the city of Houston, Tex., secured a permit from the city of Houston to construct, and it did construct, a sewer from St. Emanuel street to Austin stret, connecting at the latter point with the Austin street sewer.

It was agreed that the railway company should pay for the construction of the sewer, and in addition pay the city $15,000 for the connection, and upon payment to the city of the sum mentioned and the acceptance of the sewer by the city, the city was to own, operate, and maintain it. The amount agreed upon was paid to the city, and the sewer accepted on or about April 28, 1909; and it was thereafter in the exclusive possession and control of the city.

It was alleged by defendant in error that in refilling the excavation made for the laying of the sewer pipe the railway company, or its agent, negligently failed to fill up and tamp down the earth under the sidewalk, and as a result the earth subsided, causing the cement walk to sink at one point and raise or project several inches higher than the adjoining portions of the walk at another point; that this projection, constituting a nuisance, existed several months prior to November 20, 1912, and that on that date at about 9:30 p. m. defendant in error's wife, while crossing the street at the point of obstruction, caught her foot on the projection, and was by reason thereof thrown violently upon the concrete walk, sustaining the injuries complained of.

Plaintiff in error urges three grounds upon which it seeks to avoid liability: First, that no liability can be predicated upon merely the uneven condition of the sidewalk, or its surface; second, that the work having been performed by an independent contractor employed by it, it is relieved of liability; third, that as the city accepted the sewer about April 28, 1909, from which date until and including the time of the accident the city had exclusive possession and control thereof, operating and maintaining the same, with the duty at all times resting upon the city to exercise ordinary care to restore and maintain the sidewalk in a reasonably safe condition, the interposition of this duty upon the city broke the causal relation of the original negligence of the railway company, thereby discharging plaintiff in error from liability.

In response to special issues submitted to it, the jury found that the railway company failed to exercise ordinary care in refilling the excavation, in that it did not properly tamp down the earth to prevent the subsiding of the earth, and that as a result the condition of the sidewalk as heretofore described was brought about, and that this condition was the proximate cause of the injury. Upon the issue of independent contractor, it found that the Hedges Construction Company, employed by the Railway Company to do the work, did not have direct charge of and perform all the details of the construction work, and that the supervision of the work by the railway company was not limited to assuring the completion of the work according to the plans and specifications. A judgment was rendered in favor of defendant in error, and upon appeal the judgment was affirmed. 203 S. W. 167.

[1] It is the duty of those who do work upon or adjacent to, or who use the highways of a municipality to so observe the rights of the public in so doing, as to prevent the same from becoming impaired for the purposes of travel, just the same as the duty rests upon the municipality to do so. Kampmann v. Rothwell et al., 101 Tex. 535, 109 S. W. 1089, 17 L. R. A. (N. S.) 758.

[2] The authorities are unanimous in holding that a municipality is not an insurer of the safety of pedestrians using the sidewalks within its boundaries, and is not required to construct an even surface for the highways and streets within its boundaries, but is only required to exercise ordinary care in constructing reasonably safe highways and sidewalks, and in maintaining them so. City of Dallas v. Moore, 74 S. W. 95, 32 Tex. Civ. App. 230; Davis v. Austin, 22 Tex. Civ. App. 460, 54 S. W. 927; Galveston v. Dazet (Sup.) 19 S. W. 142.

[3] In constructing sidewalks it becomes necessary in many instances, on account of the topography of the land, to deal with elevation. In such instances, the municipality may overcome the elevation in such manner as the judgment of the proper officials having charge of the highways may dictate, and its duty to the public is discharged, provided that ordinary care is exercised to make them reasonably safe for the purposes of travel. It often results that steps are used to overcome elevation, and that there is no uniformity in so far as evenness and equality of surface are concerned; but whether the required standard has been applied by the municipality in constructing them is generally a question for the jury's determination.

[4] The question of original construction, however, is only indirectly involved in this case. The action is predicated, not upon the negligent failure to properly construct the sidewalk, but upon the negligence of the railway company in impairing the sidewalk as a place of travel. The record reveals that the sidewalk, as originally constructed, was upon practically level ground with an even surface. The jury found that there was a "step-up" at the point of the accident prior to the construction of the sewer, but it also found that the changed condition of the walk was the proximate cause of the injury. Apparently, there was no structural defect in the walk. The effect of the jury's finding is that the projection causing the injury was the result of the negligence of the railway company to properly refill the excavation, causing the

cement block of a properly constructed sidewalk to become an obstruction. This changed condition of the sidewalk is clearly apparent from the photographic exhibit found in the record. This change, from the original condition, is a circumstance indicating negligence, and one that the jury was warranted in considering in determining whether the railway company was negligent under all the circumstances.

[5] Not every defect or slight inequality in a sidewalk causing an injury is a sufficient basis upon which to predicate an action for negligence. If the defect complained of as causing the injury is so slight and unimportant in character that an injury therefrom is not reasonably to be anticipated, the one causing the defect will not be chargeable with negligence. In every case of this character the question is presented: Would a person of ordinary prudence in the discharge of that degree of care which the law imposes, have repaired the defect, or caused the same to be repaired in anticipation of such an injury? This is essentially a jury question. Watertown v. Greaves, 112 Fed. 183, 50 C. C. A. 172, 56 L. R. A. 865; Redford v. Woburn, 176 Mass. 520, 57 N. E. 1008; Graham v. Town of Oxford, 105 Iowa, 706, 75 N. W. 473; Patterson v. City of Council Bluffs, 91 Iowa, 732, 59 N. W. 63; Blyhl v. Village of Waterville, 57 Minn. 115, 58 N. W. 817, 47 Am. St. Rep. 596; Mullins v. Siegel Cooper Co., 183 N. Y. 137, 75 N. E. 1112.

The facts in the case of Watertown v. Greaves, supra, are similar to the facts in this case. The court in disposing of the same question as presented here, said:

"The next question is whether the court erred in denying the defendant's motion that the jury be directed to find for the defendant. The plaintiff was injured by a fall due to a defect in a sidewalk. There was evidence that where a gravel walk adjoined a concrete walk—the concrete projected above and across the gravel walk at a height of about 3 inches at the place where the plaintiff fell, and that the defect had existed for at least six months. This was in a thickly settled locality. The plaintiff's toe struck the edge of the concrete, causing her to fall forward on her hands and knees upon the concrete. This occurred on the morning of December 27, 1899, at about 6:15 o'clock, before sunrise, when it was still dark, and while the plaintiff was on her way to work in the mill at Watertown. We think it clear that the question whether there was a defect in the sidewalk which the defendant in the exercise of reasonable care should have remedied was properly submitted to the jury. [Citing authorities.]"

In Lamb v. Worcester, 177 Mass. 82, 58 N. E. 474, the defect consisted of the doors and hinges of a bulkhead raised approximately 1½ inches above the level of an otherwise smooth surface of a sidewalk. The plaintiff caught her foot against the main part of the bulkhead and hinge and fell, receiving the injuries complained of. The Supreme Court of Massachusetts there states and disposes of the point at issue:

"The defendant contends that the bulkhead did not constitute a defect, and that the plaintiff was not in the exercise of due care.

"Instructions to that effect were requested by it and were refused, and the defendant excepted. There was a verdict for the plaintiff.

"Whether projections of the character described from an otherwise smooth and level sidewalk constituted defects in the sidewalk which the defendant in the exercise of reasonable care should have remedied seems to us to have been properly submitted to the jury. In view of recent decisions, we do not see how it could have been ruled as a matter of law that they did not constitute defects. Bedford v. Woburn, 176 Mass. 520, and cases cited. The defendant relies upon Raymond v. Lowell, 6 Cush. 524. But in that case the alleged defect consisted of a sewer grate resting against the edge of the curbstone of a sidewalk and projecting an inch or two above it, and it was held that a person who chose to cross the street at that point and tripped over the grate could not recover. Dowd v. Chicopee, 116 Mass. 93, 95. In this case the defect was in a smooth and otherwise level sidewalk at a place where the plaintiff had a clear right to pass."

In Graham v. Town of Oxford, supra, the Supreme Court of Iowa said:

"It was said in Baxter v. City of Cedar Rapids, 103 Iowa, 599, that 'whether an obstruction or other defect in a walk is of a character to make the municipality which permits it to exist responsible for it does not necessarily depend upon the size of the defect, but upon the effects which may reasonably be apprehended from it upon persons who use the walk in a proper manner. These will vary with the circumstances of different cases, and whether the municipality is liable for a defect in its streets or walks will, as a rule, be a question of fact, to be determined by the jury under the instructions from the court, and not a mere question of law, to be determined by the court alone.'"

In Mullins v. Siegel Cooper Co., supra, a sidewalk constructed of flagstone became disturbed and out of position by reason of heavily laden wagons passing over it to and from the premises of the defendant, so that one flagstone rested upon another and was raised three inches above the level of the walk. Upon this projection the plaintiff stumbled, fell, and was injured. The Court of Appeals of New York, in reviewing the decision of the Supreme Court of that state as to the liability of the defendant, said:

"We come, therefore, first to the narrow question whether, in the sidewalk of a public and much-traveled street, if one flagstone rests upon another and is raised 3 inches above the level of the walk, it constitutes such a dangerous situation on a dark night as to warrant a recovery on behalf of a person who stumbles and falls over the same, receiving serious

injury. To this may be added the fact that this condition was allowed to exist from the summer of 1902 until March, 1903, and that the place was not lighted. There is evidence permitting the jury to find that this obstruction was 3 inches high. It would seem to require no argument to establish the fact that this condition was in the highest degree dangerous; that a person passing along at an ordinary gait in the darkness was liable to serious injury in passing over this obstruction. It has been repeatedly held that a wayfarer, passing along a public street in the night, in the absence of lights or any warning, is entitled to assume that his way is normal and safe."

It would be a profitless task to review all the decisions cited by plaintiff in error in support of its contention that as a matter of law there is no liability. Suffice to say, we have examined all of them, and find that they are distinguishable on the facts from this case.

City of Meridian v. Crook, 109 Miss. 700, 69 South. 182, L. R. A. 1916A, 482, is the one most strongly relied upon by plaintiff in error. The opinion was by a majority. There the plaintiff fell in consequence of stepping into a depression 3 inches wide in a sidewalk, and was injured. While not expressly so stating, the majority apparently found that plaintiff was guilty of contributory negligence, in that she was walking very rapidly upon a well-lighted sidewalk, without looking where she was placing her feet. We are not confronted with such a state of facts here. The jury has found, based upon evidence warranting such a finding, that Mrs. Scheppelman was not guilty of contributory negligence.

City of Meridian v. Crook cites Butler v. Village of Oxford, 186 N. Y. 444, 79 N. E. 712 in support of the rule that a municipality is not an insurer and is not expected to maintain sidewalks in an absolutely perfect condition, but is only required to use ordinary care in detecting and remedying defects, with the view of maintaining them in a reasonably safe condition for travel. The decision not only announces a correct proposition of law upon this point, but supports the conclusion we have reached in this case.

The plaintiff in some manner stumbled against the projecting edge of a stone walk in approaching from the dirt walk with which it connected. The vicinity was well lighted where the accident occurred. The court held there was no liability because: (1) There was nothing in the slight difference of grade between the stone walk and dirt walk—which defect the court found was scarcely noticeable—which reasonably should arouse apprehension of danger to travelers; and (2) the condition of the walk was not the result of breakage or wear which had impaired the original condition of the walk, which latter fact the court held sometimes

235 S.W.—14

strongly suggests an inference of negligence of the municipality, but that it involved a case of original construction. In other words, the opinion recognizes that where a municipality has exercised ordinary care in constructing sidewalks to make them reasonably safe for travel, and the condition of the sidewalk as thus constructed is interfered with in such manner as to cause a defect, it is a question of fact for the jury to determine whether those responsible for such defect are guilty of negligence in failing to remedy such defect.

[6] The photographic exhibits of record in this case clearly disclose a disturbed and changed condition of the sidewalk from that originally constructed—and this fact, together with the other facts surrounding the injury, was sufficient upon which to predicate an action for negligence.

[7] In view of the evidence and the findings of the jury thereunder, the defense that the work was performed by an independent contractor is without merit. The evidence of C. A. Cavin, witness for plaintiff in error, is to the effect that one Burns was chief engineer for the railway, and that he was assistant engineer in constructing the work; that in that capacity he was on the work practically every day, consulting with the representatives of the construction company as to the details of the construction; that in case a minor detail of the work was in question, he gave instructions as to how it should be done, and varied the plans from time to time as to minor details; that on all questions affecting the construction other than minor details, the decision of the railway company in connection with that of the city was final; that in exercising control or supervision over the work, the contract with the subcontractor and his instructions from the railway company were his guide; that he did whatever Burns instructed him to do, and that the construction engineer followed his guide.

It is clear from the evidence that the railway company actually participated in the construction of the sewer, and that it exercised immediate control and supervision of it. It matters not what prompted the railway company to supervise the construction, whether in pursuance of the contract, or in violation of it, or as a mere intermeddler; if its will dominated and controlled, and negligence resulted, it would nevertheless be liable.

[8] There is another cogent reason for overruling the assignment presenting this issue. The contract between the railway company and the construction company provided that, if necessary to "water-tamp" the refilling of the excavation, it was to be done at the expense of the railway company. The jury was warranted in concluding that the failure to "water-tamp" the earth was neg-

ligence. Under the provision of the contract the railway company could have required that the earth be water-tamped. The effect of its failure to do so was, under such circumstances, to agree by contract to the defective construction, for which we think it is primarily liable, notwithstanding the work may have been done by an independent contractor. It is not within the power of the parties to a contract to agree to negligently do a thing which will result in an obstruction to the highways of a municipality rendering them unsafe for public use, without incurring liability therefor, in the event a pedestrian, who, without negligence on his part, suffers an injury therefrom, any more than it would be to contract outright to erect an obstruction therein rendering them unsafe and causing injury.

[9] With reference to the contention that the city of Houston alone is liable, it is our view that no person, with or without the consent of the municipality, can actively render a highway or sidewalk of a municipality unsafe for public use, without, as a rule, being liable to a traveler who suffers injury thereby. The breach of its duty by the municipality to restore the highway or sidewalk to a reasonably safe condition and maintain it in that condition—in other words, its passive neglect—furnishes no defense to an action for damages against the party whose active negligence rendered the highway or sidewalk dangerous. Gates v. Penn. Ry. Co., 150 Pa. 50, 24 Atl. 638, 16 L. R. A. 555.

The case of city of San Antonio v. Talerico, 98 Tex. 151, 81 S. W. 519, is, in our opinion, applicable here. It was there determined, under substantially similar facts, that the St. Joseph's Orphan Asylum, which years before had created a dangerous condition of the sidewalk, was primarily liable for an injury to a pedestrian, notwithstanding the city was also liable.

In view of our conclusions, we recommend that the judgment of the district court and of the Court of Civil Appeals be affirmed.

GREENWOOD and PIERSON, JJ. The judgment recommended in the report of the Commission of Appeals is adopted, and will be entered as the judgment of the Supreme Court.

⬅For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes